UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**VALINDA LEE TOLLES,**

        **Plaintiff,**        CIVIL ACTION NO. 12-cv-14771

    vs.

                         DISTRICT JUDGE GEORGE CARAM STEEH

**COMMISSIONER OF**        MAGISTRATE JUDGE MONA K. MAJZOUB
**SOCIAL SECURITY,**

        **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Valinda Tolles seeks judicial review of Defendant the Commissioner of Society Security's determination that she is not entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment or Remand (docket no. 17) and Defendant's Motion for Summary Judgment (docket no. 21). The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 4.) The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation pursuant to Eastern district of Michigan Local Rule 7.1(f)(2).

**I.    RECOMMENDATION:**

For the reasons that follow, Plaintiff's Motion for Summary Judgment (docket no. 17) should be GRANTED IN PART AND DENIED IN PART, and Defendant's Motion for Summary Judgment (docket no. 21) should be DENIED. This matter should be remanded pursuant to sentence four of

42 U.S.C. § 405(g) for further proceedings in consideration of Plaintiff's moderate difficulties with concentration, persistence, or pace.

## II. PROCEDURAL HISTORY:

Plaintiff filed an application for Disability Insurance Benefits and an application for Supplemental Security Income with protective filing dates of January 3, 2007, alleging that she had been disabled since April 1, 2006, due to depression, anxiety, diabetes, degenerative disc disease, obesity, osteoarthritis, gastroesophogeal reflux disease, hyperlipidemia, and headaches. (*See* TR 22-23.) The Social Security Administration denied benefits, and on April 7, 2009, and Plaintiff testified at a *de novo* hearing, which was held before Administrative Law Judge (ALJ) George Gaffaney. (*See* TR 113-26.) The ALJ issued an unfavorable decision, and at Plaintiff's request, the Appeals Council remanded the matter for a subsequent hearing. (TR 127-131.) Plaintiff testified at a second hearing before ALJ Gaffaney on June 13, 2011, and on September 1, 2011, the ALJ issued a partially unfavorable decision, finding that (1) Plaintiff was not disabled from April 1, 2006, through May 26, 2011, because she was capable of performing a significant number of jobs in the national economy, and therefore, she was not entitled to Disability Insurance Benefits; and (2) when Plaintiff's age category changed on May 26, 2011, she became disabled under the guidelines and was, therefore, entitled to Supplemental Security Income beginning on May 26, 2011. (TR 20-26.) The Appeals Council declined to review the ALJ's decision (TR 4-12), and Plaintiff commenced this action for judicial review. The parties then filed their instant Motions. Plaintiff filed a Response to Defendant's Motion. (Docket no. 22.)

## III. PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND VOCATIONAL EXPERT TESTIMONY

A.     **Plaintiff's Testimony**[1]

Plaintiff was 55 years old at the time of the administrative hearing and 50 years old at the time of alleged onset. (*See* TR 44.) She has previous work experience as a cleaner and as a balloon rigger. (TR 65.) Plaintiff testified that she could no longer work because of symptoms caused by her fibromyalgia, back pain, and anxiety. (TR 47-61.) At the time of the hearing, Plaintiff lived with her daughter and her seven-year-old grandson. (TR 47-48.) She indicated that her daughter attended school and that she would watch her grandson when he was not also in school. (TR 47-48.) She noted, however, that "he watches himself, mostly." (TR 48.) Plaintiff is approximately 5' 4" tall, and at the time of the hearing, she weighed approximately 220 pounds. (TR 47.)

Plaintiff testified that although she suffered from Type II diabetes, it was "kind of under control." (TR 49.) She also indicated, however, that she suffered from fibromyalgia, which caused her to "ache all the time," in her shoulders, legs, neck, back, and feet. (TR 49.) She testified that the fibromyalgia pain started in around 2006. (TR 49.) Plaintiff added that the pain would prevent her from "doing normal stuff," like walking. (TR 50, 51.) She testified that she could only walk about five minutes before should would have to stop. (TR 51-52.) She also testified that she didn't cook or do laundry very often because of the pain; instead, "[her] daughter has to do all that." (TR 50.) Plaintiff told the ALJ that her back was one of her main problems and that should could not lift more than a gallon of milk without her back hurting. (TR 52.) She added that she could stand for about five minutes before her back and feet started to hurt. (TR 57.)

---

[1]This section is adapted from the testimony that Plaintiff gave at her second administrative hearing on June 13, 2011.

3

Plaintiff also testified that she suffered from anxiety, which she alleged prohibited her from driving and caused her legs to shake,[2] which, in turn, kept her from sleeping at night. (TR 51, 52.) Plaintiff further testified that her anxiety caused her to become "anti-social in the last two or three years" and that she did not have any friends. (TR 53.) She said that her anxiety felt "like you were going to go on a ride, when you go to [an amusement park] . . . [her] stomach is like that all the time." (TR 60.) She also added that her anxiety led to concentration problems and memory problems. (TR 54.) Plaintiff indicated that she "can't concentrate on anything" and that she would watch a television show 20 times and not remember that she watched it because she "ha[s] a million things going on in [her] head." (TR 54, 60.) Plaintiff further testified that she had headaches "all the time" that "start[] in her back and go[] way up to the front . . . of [her] head." (TR 56.) She told the ALJ that she took aspirin and two or three 650 milligram Percocet every day to alleviate her fibromyalgia pain and her headaches, but it would only "take the edge off." (TR 45, 57.)

### B. Medical Record

While Plaintiff sets forth a brief summary of her "chronic back problems" and her mental health impairments (docket no. 17 at 6-7), Defendant asserts that "[t]he medical evidence in this case was well-summarized by the ALJ," and does not contest any of the facts set forth by Plaintiff (docket no. 21 at 7.) Therefore, the Court, having conducted an independent review of Plaintiff's medical record, hereby incorporates by reference the medical record as set forth in the ALJ's opinion (TR 22-30) and as set forth in Plaintiff's Motion (docket no. 17 at 6-7). The Court will incorporate additional comments and citations as necessary throughout this Report and Recommendation.

### C. The Vocational Expert

---

[2] Plaintiff's leg was shaking during her hearing, and she testified that it happens all the time, whether she is standing, sitting, or lying down. (TR 58.)

4

The ALJ asked the VE to consider a hypothetical person of Plaintiff's age, education, and vocational experience who was limited to lifting 20 pounds occasionally and 10 pounds frequently. He added that the individual could stand and sit six hours each in an eight-hour workday but could only walk five minutes at a time. The ALJ further limited the individual to no climbing of ladders and only occasional climbing of stairs and occasional stooping, balancing, kneeling, crouching, or crawling. The ALJ added that the individual was limited to occasional exposure to heights, moving parts, other hazards, humidity, and wetness.[3] The ALJ further added that the individual was limited to simple, routine tasks with occasional changes in a routine work setting and occasional interaction with the public. (TR 65-66.) The VE testified that an individual with such limitations could not perform any of Plaintiff's past work but could perform work in "[a] wide variety of manufacturing, production-type" jobs, including as a light, unskilled assembler, inspector, or packager. The VE testified that there were approximately 53,800 of these jobs in Michigan. (TR 67.)

The ALJ then asked the VE to consider the same hypothetical person, but assume that the person was limited to lifting 10 pounds occasionally and five pounds frequently. He added that the individual could stand for only two hours in an eight-hour workday but could sit for six hours. (TR 67.) The VE testified that such an individual could perform work in similar positions, but at the sedentary level; the products that were being assembled, sorted, and packaged would get lighter. The VE testified that there were approximately 10,000 such jobs in Michigan. (TR 68.)

The ALJ then asked the VE to assume that the same hypothetical individual was unable to sustain work for an eight-hour workday. (TR 68.) The VE testified that such an individual would be precluded from employment. (TR 69.)

---

[3]While the VE was testifying, Plaintiff added that her headaches would increase when it was humid outside. (TR 66.)

5

## IV.  ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the SSA through September 30, 2006, that she had not engaged in substantial gainful activity since her alleged onset date, April 1, 2006, and that she suffered from severe depression, anxiety, diabetes mellitus (type II), degenerative disc disease, and obesity. (TR 22.) The ALJ also found, however, the despite Plaintiff's complaints and diagnoses of osteoarthritis, gastroesophegeal reflux disorder, hyperlipidemia, sleep apnea, and fibromyalgia, these conditions were not severe. (TR 22-24.) The ALJ further found that Plaintiff's complaints of headaches were not an independent impairment but were more aptly described as "a symptom of [Plaintiff's] severe impairments." (TR 23.) The ALJ then found that Plaintiff's impairments did not meet or equal those listed in the Listing of Impairments. (TR 24-25.)

In determining Plaintiff's RFC, the ALJ found that Plaintiff's allegations regarding the extent of her symptoms were not wholly credible; thus, the ALJ found that Plaintiff could perform light work, but he added the following limitations:

> The claimant is limited to walking, at most, five minutes at a time. The claimant cannot climb ladders and can only occasionally climb stairs, kneel, stoop, crouch, balance, and crawl. In terms of environmental limitations, the claimant can only occasionally be exposed to humidity/wetness and hazards (heights, moving parts, etc.). The claimant's mental impairments limit her to simple routine tasks with only an occasional change in routine work setting and only occasional interaction with the public.

(TR 25.) The ALJ then determined, in reliance on the VE's testimony, that from April 1, 2006, through May 26, 2011, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (TR 30-31.) Thus, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from April 1, 2006, through May 26, 2011; therefore, Plaintiff was not entitled to DIB benefits, and she was not entitled to SSI benefits before May 26, 2011. (TR

30-32.)  The ALJ further found, however, that on May 26, 2011, Plaintiff's age category changed to an individual of advanced age.  (TR 30.)  Therefore, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff was entitled to SSI benefits for the period beginning May 26, 2011.  (TR 31-32.)

## V.     LAW AND ANALYSIS

### A.     Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial

evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that this matter should be reversed or remanded under sentence four because the ALJ erred when he (1) found that Plaintiff was able to perform light work despite her spinal condition; (2) failed to account for her concentration and memory problems; (3) and found Plaintiff not wholly credible. (Docket no. 17 at 9-16.)[4] (*See* docket no. 9 at 9-11.) Plaintiff's first and third arguments, however, are inextricably intertwined as her assertion that the ALJ should have limited her to sedentary work is based on her

---

[4]To the extent Plaintiff argues that the ALJ erred in the formulation of the hypothetical questions presented to the VE, the ALJ is only required to incorporate in his hypothetical those limitations that he finds credible and supported by the record. *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Here, the ALJ presented all of the limitations in Plaintiff's RFC in his first hypothetical question to the VE, and the VE testified that there are jobs available for a person with these limitations. The ALJ's second and third hypotheticals imposed additional limitations that the ALJ did not ultimately include in Plaintiff's RFC. Thus, in substance, Plaintiff's motion asserts that the ALJ's RFC is not supported by substantial evidence for the reasons discussed herein.

9

subjective complaints of pain and the evidence that (she argues) supports these subjective complaints.

### 1. Plaintiff's Credibility and Her Physical RFC

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner*, 127 F.3d 525, 531 (6th Cir. 1997). But Credibility assessments are not insulated from judicial review. Despite the deference that is due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96–7p. "It is not enough to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.* "The adjudicator may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree. *See id.*

Further, to the extent that the ALJ found that Plaintiff's statements are not substantiated by the objective medical evidence in the record, the Regulations explicitly provide that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 416.929(c)(2). The ALJ must consider: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than

medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. *See* 20 C.F.R. § 416.929(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994) (applying these factors).

The ALJ found as follows:

> [C]laimant's statements concerning the intensity, persistence, and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment for four reasons. First, the limiting effects alleged are unsupported by the objective medical evidence. Second, the claimant's activities of daily living are inconsistent with the limiting factors alleged. Third, the allegations are vague and equivocal. Finally, the opinion evidence in record established that the claimant's residual functional capacity is greater than alleged.

(TR 23.) The ALJ then discussed each of his "four reasons" in greater detail. (TR 26-29.) Plaintiff asserts that the objective medical evidence supports her subjective claims and that "the ALJ improperly used [her] daily activities to undermine her credibility." (Docket no. 17 at 16).

When discussing the objective medical evidence, the ALJ considered each of Plaintiff's impairments individually.[5] (*See* TR 26-27.) Focusing first on Plaintiff's muscuoskeletal impairments, he acknowledged Plaintiff's 2011 chest x-ray and MRI, noting minimal degenerative changes, mild spurring and disc narrowing, minimal disc bulge and moderate to marked narrowing at the L20L3 and L5-S1 vertebra. (TR 26.) The ALJ then found that these objective findings did not support Plaintiff's allegations. Turning to Plaintiff's fibromyalgia, the ALJ discussed the findings of consultative examiner Bhatti Sachdeve, M.D., who found that Plaintiff had "no significant abnormality on physical examination." (TR 26.) He noted that Plaintiff had "stable

---

[5]Plaintiff's argument addresses only the ALJ's findings with regard to the "ongoing, severe pain" and her "multiple spinal impairments." (*See* docket no. 17 at 15-16.) Therefore, although the ALJ also specifically addressed Plaintiff's diabetes and mental impairments, the Court will limit its discussion to the issues raised by Plaintiff.

11

ambulation, the ability to squat, the ability to heel-toe walk, no inflammatory arthritis, and no adema on [her] lower extremeties; she also had normal range of motion. (TR 26.)

Plaintiff argues that she is "unable to stand for any extended period of time — let alone for 6 hours a day," that she can only stand or walk for five minutes at a time, and that she cnnot lift anything heavier than a gallon of milk." Thus, she asserts, she cannot perform work at the "light" level. (Docket no. 17 at 10-11.) Plaintiff points to several MRI's from 2006 to support her claim that she has lumbar degenerative disc disease, bilateral lumbar facet arthropathy, cervical degenerative disc disease, cervical facet arthropathy, and spinal canal stenosis. (Docket no. 17 at 11, 15.) Plaintiff also notes that she has undergone injection therapy and that she treats with a pain management doctor. (*Id.*) Plaintiff is correct that the ALJ did not address this evidence directly, but while such an "evidentiary deficit" may be reversible error, *Suide v. Astrue*, 2010 WL 1508510, at *6 (7th Cir. 2010), the ALJ need not articulate every piece of evidence in a claimant's record; rather, the ALJ simply needs to construct "an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996). Here, the ALJ acknowledged the remaining evidence when he stated that "the vast majority of the medical evidence in record (sic) is diagnostic in nature and while that evidence is germane to establishing the existence and severity of the impairment, which is so established . . . [t]hat evidence is not particularly indicative of the claimant's functional capacity." (TR 26.) The evidence that the ALJ did discuss supports his decision.

The ALJ then turned to Plaintiff's daily activities and found that they were "inconsistent with a finding that the claimant is unable to perform any competitive work." (TR 27.) The ALJ elaborated as follows:

> The claimant testified that she watches her grandson in the summer and cares for him. In 2007, the claimant indicated that she had full custody of the grandchild. The claimant is physically able to drive, notwithstanding her loss of her driver's license secondary to a second conviction of DUI. Additionally, the claimant has interviewed for work during the period of alleged disability. The claimant's willingness to engage potential employers demonstrates that she does have the functional capacity to engage in work. This high level of functioning is not consistent with the claimant's testimony at hearing of being able to sustain virtually no level of function.

(TR 27 (citations omitted).)

Plaintiff refers to her testimony (as discussed, *supra*) and correctly asserts that "there is a profound difference between an individual with a sedentary lifestyle and one having a sedentary RFC" and that "'some fairly minimal daily activities are not comparable to typical work activities.'" (Docket no. 17 at 16 (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248-49 (6th Cir. 2007)) (citing *Stennett v. Comm'r of Soc. Sec.*, F. Supp. 2d 665, 672 (E.D. Mich. 2007)).) But the ALJ did not focus on some "fairly minimal daily activities" to find that Plaintiff did not live a "sedentary lifestyle." The ALJ found that Plaintiff had a "high level of functioning" because she cared for her grandson, was *physically*[6] able to drive her car, and was able to "engage potential employers" in looking for a job. The ALJ believed that this evidence cast doubt on Plaintiff's credibility because it was inconsistent with her testimony that she couldn't walk or "do[] normal stuff." (*See* TR 50.)

As noted, the ALJ then continued his analysis and discussed the vagueness of Plaintiff's general allegations of pain and functional limitations, finding that her "inability to articulate precise functional limitations diminishe[d] [her] credibility in the baldly asserted conclusion that the claimant cannot work." (TR 27.) He then discussed the opinions of record and found the overall

---

[6]Plaintiff attempts to undermine the ALJ's findings by implying that the ALJ mistakenly thought that she lost her license due to her DUI, but the ALJ was concerned with Plaintiff's physical ability to drive, regardless of why she no longer had her license. And the ALJ's finding is consistent with Plaintiff's testimony. (*See* TR 50-51.)

weight of the opinions inconsistent with Plaintiff's allegations. (TR 27-30.) For these reasons, even if the Court were to agree with Plaintiff, the Court finds that the ALJ's credibility finding is supported by the evidence in the case record and is sufficiently specific to make clear to Plaintiff and the Court the weight the adjudicator gave to Plaintiff's statements and the reasons for that weight. Moreover, with regard to Plaintiff's physical RFC, even if the Court would decide this matter differently, the ALJ's decision is supported by substantial evidence; this matter falls withing the ALJ's "zone of choice." Therefore, Plaintiff's Motion should be denied with regard to this issue.

### 2. Plaintiff's Concentration and Memory

Plaintiff argues that the ALJ failed to recognize her "ongoing struggle to focus and concentrate as a result of her mental health impairments, as well as her chronic pain." (Docket no. 17 at 11.) Plaintiff asserts that despite the ALJ finding that Plaintiff had moderate difficulty in concentration, persistence, and pace, he failed to account for any concentration problems in her RFC. (*Id.*)

When the ALJ makes a finding that a claimant has moderate limitations in concentration, persistence or pace, the ALJ must account for such limitations in Plaintiff's RFC and in his hypothetical questions to the VE. *See Tinker v. Astrue*, No. 08-11675, 2009 WL 3064780, at *8 (E.D. Mich. Sept. 22, 2009). Findings of moderate limitations in concentration, persistence, or pace do not necessarily preclude "simple, routine, unskilled work." *Lewicki v. Comm'r*, No. 09-11844, 2010 WL 3905375, at *2 (E.D. Mich. Sept. 30, 2010) (citations omitted).

Courts in this district draw a distinction between cases in which a medical expert finds a moderate deficiency in concentration, persistence, or pace from those in which the ALJ independently finds such a limitation. "When the ALJ has found such a limitation, the ALJ must

14

incorporate these limitations into the hypothetical questions" and the RFC. *McPhee v. Comm'r*, No. 11-13399, 2013 WL 1277889, at *2 (E.D. Mich. Mar. 27, 2013) (citations omitted). Further, "[w]here the ALJ finds that a claimant has deficiencies in concentration, persistence and pace, [the] failure to account for such deficiencies . . . constitutes reversible error." *Kretzmer v. Comm'r*, No. 11-15623, 2012 WL 6642637, at *4 (E.D. Mich. Dec. 20, 2012) (citations omitted).

Here, the ALJ found that "[i]n terms of concentration, persistence or pace, the claimant has a moderate difficulty." (TR 24.) The ALJ further found that Plaintiff's limitations in this area were not marked limitations because they do not "preclude her from completing tasks without extra supervision or assistance, or in accordance with quality and accuracy standards, or at a consistent pace without an unreasonable number and length of rest periods, or without undue interruptions or distractions." (TR 24-25.) The ALJ also gave "great weight" to the opinion of Dr. Blaine Pinaire, who found that Plaintiff had a "moderate limitation in her ability to understand and remember detailed instructions." The ALJ then limited Plaintiff to "simple routine tasks with only an occasional change in routine work setting." (TR 25.)

The ALJ's limitation to "simple routine tasks with only an occasional change in routine work setting" accounts for Plaintiff's moderate limitation in her ability to understand and remember detailed instructions. Indeed, the ALJ even acknowledged that "Dr. Pinaire limits the claimant to simple routine tasks, which she describes as unskilled, with only occasional changes in routine work setting." But the ALJ's RFC finding does not account for his finding that Plaintiff had moderate limitations in concentration, persistence, or pace. To the contrary, a claimant with moderate deficits in concentration, persistence, or pace may be unable "to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job." *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930 (E.D. Mich. 2005).

15

It is well established that the difficulty of a task does not necessarily equate to the difficulty of staying on task. *See, e.g., Green v. Comm'r*, No. 08-11398, 2009 WL 2365557, at *10 (E.D. Mich. July 28, 2009). The ALJ determined that Plaintiff has moderate deficiencies in concentration, persistence, or pace, but the RFC and hypothetical questions to the VE fail to adequately account for these limitations. Accordingly, the undersigned recommends that this matter be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in consideration of Plaintiff's moderate difficulties with concentration, persistence, or pace.

## VI. CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment (docket no. 17) should be GRANTED IN PART AND DENIED IN PART, and Defendant's Motion for Summary Judgment (docket no. 21) should be DENIED.

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: September 23, 2013      s/ Mona K. Majzoub
                                          MONA K. MAJZOUB
                                          UNITED STATES MAGISTRATE JUDGE


**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: September 23, 2013      s/ Lisa C. Bartlett
                                          Case Manager